**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION**

**MICHAEL LYNN ROBINSON,**

    **Petitioner-Defendant,**

                                                    **Civil Action No. 3:11-cv-3**
**v.**                                                 **Criminal Action No. 3:10-cr-17**
                                                **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT DENY PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**I.    INTRODUCTION**

On January 13, 2011, Petitioner-Defendant Michael Lynn Robinson ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Petition" or "Motion"). (Civil Action No. 3:11-cv-3, ECF No. 1; Criminal Action No. 3:10-cr-17, ECF No. 41.) On January 18, 2011, the undersigned Magistrate Judge entered an Order directing Respondent, the United States of America ("Respondent" or "Government") to answer Petitioner's motion. (Criminal Action No. 3:10-cr-17, ECF No. 47.) On February 4, 2011, Petitioner filed a motion to stay, asking the Court to place a hold on any filings in his case until he reached his new destination and informed the Court of his new address at a state correctional facility in Camp Hill, Pennsylvania. (Criminal Action No. 3:10-cr-17, ECF No. 50.) The Government responded to Petitioner's motion on March 14, 2011. (Criminal Action No. 3:10-cr-17, ECF No. 61.) On March 25, 2011, Petitioner filed a letter notifying the Court of his new

address.[1]  (Criminal Action No. 3:10-cr-17, ECF No. 66.)  The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing.  For the reasons stated below, the undersigned recommends that the District Judge deny Petitioner's motion to vacate.

## II. FACTS

### A. *Conviction and Sentence*

On March 17, 2010, the Grand Jury charged Petitioner in a one-count Indictment.  Petitioner was charged with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2).  (Indictment, Criminal Action No. 3:10-cr-17, ECF No. 1.)

On June 23, 2010, Petitioner signed a plea agreement in which he agreed to plead guilty to Count One, being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (Plea Agreement, Criminal Action No. 3:10-cr-17, ECF No. 30 at 1.)  In the plea agreement, the parties stipulated and agreed that Petitioner's total relevant conduct was the possession of one Ruger, model Single-Six, .22 caliber revolver, serial number 262-46577.  (*Id.* at 3.)  Additionally, Petitioner waived his right to appeal and collaterally attack his sentence.  Specifically, Petitioner's plea agreement contained the following language concerning his waiver:

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the

---

[1] Petitioner also filed a letter informing the Court of his change of address to the same correctional facility in Camp Hill, Pennsylvania on March 23, 2011.  (Criminal Action No. 3:11-cr-17, ECF No. 64.)  However, this letter noted a different post office box number than the one in Petitioner's later letter.  The address in Petitioner's March 25, 2011 letter matches the one listed on the docket sheet in Petitioner's case.

manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. **Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus).** The United States does not waive its right to appeal the sentence; however, in the even there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(*Id.* at 4 (emphasis added).)

On July 1, 2010, Petitioner entered his plea in open court before the undersigned. At the time of his plea, Petitioner was 52 years old, had completed the eleventh grade, and had earned his GED. (Plea Hrg. Tr., Criminal Action No. 3:10-cr-17, ECF No. 55 at 4:12-15, 5:23-25.) Petitioner also affirmed that he had no disability or hearing impairment that prevented him from fully participating in the plea colloquy. (*Id.* at 4:19-22.) When reviewing the plea agreement for the record, the Government specifically mentioned that Petitioner was waiving his appellate and collateral attack rights. (*Id.* at 8:10-15.) The Court asked Petitioner if he understood that he was giving up his right to appeal any sentence and his right to file a writ of habeas corpus attacking the validity of his plea and sentence, and Petitioner replied that he did. (*Id.* at 9:24-10:5.) When asked, Petitioner's counsel stated that he believed Petitioner understood the importance of this waiver. (*Id.* at 10:6-9.) Petitioner further affirmed that he had reviewed the plea agreement with his attorney before signing it. (*Id.* at 10:14-16.) The Court reviewed all the rights Petitioner was giving up by entering a plea of guilty. (*Id.* at 15:22-17:4.) During the hearing, the Government presented the testimony of Donald Lockhart, Special Agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives, to establish a factual basis for the plea. (*Id.* at 17:15-20:10.) Petitioner did not contest Agent Lockhart's testimony. (*Id.* at 20:12-14.)

After the Government presented Agent Lockhart's testimony, Petitioner advised the Court that he was guilty of Count One of the Indictment. (*Id.* at 20:17-23.) He further stated under oath that no one had attempted to force him to plead guilty and that he was pleading guilty of his own free will. (*Id.* at 20:24-25:5.) Additionally, Petitioner testified that his plea was not the result of any promises other than those in the plea agreement. (*Id.* at 21:6-9.) When asked, Petitioner acknowledged that his counsel had adequately represented him and that his counsel had neither left anything undone nor did anything improperly during his representation. (*Id.* at 21:21-22:5.) Finally, Petitioner advised that he was in fact guilty of the crime to which he was pleading guilty. (*Id.* at 22:6-12.)

At the conclusion of the plea colloquy, the undersigned determined that Petitioner's plea was made freely and voluntarily, that Petitioner had "full knowledge and understanding" of the consequences of his plea, and that the elements of the crime charged in Count One were established beyond a reasonable doubt. (*Id.* at 22:13-20.) Petitioner did not object to the Court's finding.

On October 26, 2010, Petitioner appeared before the Honorable John Preston Bailey, Chief United States District Judge, for sentencing. Chief Judge Bailey sentenced Petitioner to a term of 110 months incarceration, to run consecutively with any previous state or federal sentences, followed by a three year term of supervised release. (Judgment in a Criminal Case, Criminal Action No. 3:10-cr-17, ECF No. 38.)

*B.     Appeal*

Petitioner did not pursue a direct appeal.

C.  *Federal Habeas Corpus*

   1.  **Petitioner's Motion**

In his Petition, Petitioner contends that the United States Attorney waited for approximately two years after the dismissal of state charges to seek an indictment charging Petitioner for possession of a firearm by a prohibited person. (Criminal Action No. 3:10-cr-17, ECF No. 41 ("Pet.") at 5.) Furthermore, Petitioner alleges that his neither his attorney nor the state judges who sentenced him in West Virginia and Pennsylvania knew of the United States Attorney's intention of seeking a federal indictment against Petitioner. (*Id.* at 5(a).)[2] Petitioner alleges that this delay in seeking a federal indictment prevented him from receiving credit for "time spent in jail" and that his state and federal sentences should have been ordered served concurrently rather than consecutively. (*Id.*)

   2.  **Government's Response**

In its Response, the Government first alleges that Petitioner's motion should be dismissed because, pursuant to the plea agreement signed by Petitioner, he has waived his rights to collaterally attack his sentence. (Criminal Action No. 3:10-cr-17, ECF No. 61 ("Resp.") at 2-5.) Furthermore, the Government asserts that Petitioner's motion should be dismissed because he has not identified "any constitutional infirmity in his sentence." (*Id.* at 5-7.)

D.  *Recommendation*

Based upon a review of the record, the undersigned recommends that Petitioner's motion be denied and dismissed from the docket because Petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction. Furthermore, Petitioner has made no claim that

---

[2] Petitioner has inserted one page after Page 5 of his Petition on which he sets forth his ground for relief. (*See* Petition at 5(a).) Therefore, the Court will utilize Petitioner's page numbering when referring to his Petition.

the alleged delay in seeking a federal indictment denied him a fair trial, and Petitioner has no right to have his federal and state sentences run concurrently.

### III. ANALYSIS

*A. Petitioner's Motion Should Be Denied Because He Validly Waived His Collateral Attack Rights*

    **1. Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge v. Allison*, 431 U.S. 63, 71 (1877). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." *Id.* The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).

The Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. *Id.* at 732. Furthermore, the *Attar* court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel." *Id.*

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. *Lemaster*, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." *Id.* at 220. The *Lemaster* Court did not address whether the same exceptions that were noted by the *Attar* court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. *Id.* at 220 n.2; *see also United States v. Cannady*, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet defined the scope of collateral attack waivers and so has not yet "defined the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." *Braxton v. United States*, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005). However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. *Cannady*, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." *Braxton*, 358 F. Supp. 2d at 503.

2.  **Law Governing Whether a Waiver is Knowing and Intelligent**

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the

accused.'" *Attar*, 38 F.3d at 731 (quoting *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." *United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." *United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002).

### 3. Petitioner Validly Waived His Right to Collaterally Attack His Sentence

In his motion, Petitioner asserts that he was prejudiced by delay in seeking a federal indictment against him and that this delay prevented him from serving his state and federal sentences concurrently. (*See* Pet. at 5-5(a).) However, Petitioner entered into a plea agreement in which he agreed to waive his right to collaterally attack his sentence in any manner, including motions brought pursuant to 28 U.S.C. § 2255. (Plea Agreement, Criminal Action No. 3:10-cr-17, ECF No. 30 at 4.) The undersigned finds that Petitioner's waiver is knowing and intelligent. *See Attar*, 38 F.3d at 731. At the Rule 11 plea colloquy, Petitioner testified that he received an eleventh grade education and did not have a disability or hearing impairment that would prevent him from participating in the hearing. (Plea Hrg. Tr., Criminal Action No. 3:10-cr-17, ECF No. 55 at 4:14-15, 4:19-22.) The undersigned also specifically asked Petitioner if he understood that he was "giving up the majority of [his] rights to appeal any sentence imposed upon [him] by the Court, as well as the right to file habeas corpus petitions attacking the validity of the guilty plea and sentence," and Petitioner replied that he understood. (*Id.* at 9:25-10:4 (alterations in original)); *see also Blick*, 408 F.3d at 169. Petitioner also testified that he reviewed the plea agreement with his attorney before signing it. (*Id.* at 10:17-20.) At the end of the plea colloquy, the undersigned noted that Petitioner

was competent, that he made his plea freely and voluntarily, and that he had full knowledge and understanding of the consequences of his plea. (*Id.* at 22:13-20.) Therefore, the undersigned finds that Petitioner's motion should be dismissed because he validly waived his rights to collaterally attack his sentence.

B. *Petitioner Has No Constitutional Right to Serve His State and Federal Sentences Consecutively*

The United States Supreme Court has held that delay in seeking an indictment constitutes a due process violation only when a defendant can demonstrate that this delay caused "substantial prejudice" to his right to a fair trial "and that the delay was an intentional device [for the government] to gain tactical advantage." *United States v. Marion*, 404 U.S. 307, 324 (1971) (alteration in original). Six years later, the Court stated that "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' . . . precisely because investigative delay is not so one-sided." *United States v. Lovasco*, 431 U.S. 783, 795 (1977) (internal citation omitted). Therefore, the *Lovasco* Court held that a defendant's due process right is not violated by investigative delay, "even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796.

The Fourth Circuit has devised a two-pronged test for determining whether a defendant's due process right is violated by pre-indictment delay. First, a court must determine whether the defendant has met his burden of proving actual prejudice. *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 403 (4th Cir. 1985). Then, if the defendant has met this burden, the court considers "the government's reasons for the delay, 'balancing the prejudice to the defendant with the Government's justification for delay.'" *Id.* at 404 (citation omitted). Furthermore, the Fourth Circuit has held that "because there is no right to serve state and federal sentences concurrently, a[]

[defendant's] lost chance of doing so **cannot** be used to establish prejudice for the purposes of challenging pre-indictment delay." *United States v. Uribe-Rios*, 558 F.3d 347, 358 (4th Cir. 2009) (alteration in original) (emphasis added) (citations omitted); *see also Mikolon v. United States*, No. 5:11-cv-20, 2011 WL 3648242, at *3 (N.D. W. Va. Aug. 18, 2011) (citing *Uribe-Rios* in determining that defendant could not claim actual prejudice from pre-indictment delay). The *Uribe-Rios* court also noted that "the opportunity to serve concurrent sentences does not implicate [the] Fifth Amendment right to a fair *trial*." *Id.* (alteration in original).

Here, Petitioner alleges that the approximately two year delay in seeking a federal indictment against him caused him to lose the chance to have his state and federal sentences run concurrently. (Pet. at 5(a).) Specifically, Petitioner argues that there was no "just reason for the U.S. Attorney's delay other than to increase the time the aging Petitioner would have to spend in prison." (*Id.*) However, Petitioner's argument is without merit because losing the chance to serve sentences concurrently can never establish actual prejudice for a due process violation. *See Uribe-Rios*, 558 F.3d at 358; *Mikolon*, 2011 WL 3648242, at *3. Petitioner has offered no other evidence to meet his burden that pre-indictment delay actually prejudiced his right to a fair trial, *see Uribe-Rios*, 558 F.3d at 358, and so his motion to vacate should be denied.

In sum, the undersigned finds that Petitioner knowingly and intelligently waived his right to collaterally attack his sentence as part of his plea agreement. Furthermore, Petitioner's lost chance to serve his federal and state sentences consecutively cannot form the basis for a finding of actual prejudice caused by pre-indictment delay. For these reasons, the undersigned recommends that Petitioner's motion be denied and dismissed.

## IV. RECOMMENDATION

Based upon a review of the record, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be **DENIED** and **DISMISSED** from the docket because Petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack the conviction. Furthermore, the undersigned recommends that Petitioner's Motion to Stay (Criminal Action No. 3:10-cr-17, ECF No. 50) be **DENIED AS MOOT** because Petitioner has already notified the Court of his current address. (*See* Criminal Action No. 3:10-cr-17, ECF No. 66.)

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Michael Lynn Robinson.

**DATED:** November 2, 2011

_David J. Joel_
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE